## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OKLAHOMA

Filed / Docketed
September 12, 2007

IN RE: )
)
**THOMPSON, MICHAEL REX** and )        **Case No. 05-15680-R**
**THOMPSON, SANDRA RAY,** )            **Chapter 7**
)
Debtors. )

_____

**AFFORDABLE BAIL BONDS, INC.** )
**and ROBERTA A. DAMPF-** )
**AGUILAR,** )
)
Plaintiffs, )
)
vs. )        **Adv. No. 07-1016-R**
)
**MICHAEL REX THOMPSON** and )
**SANDRA RAY THOMPSON,** )
)
Defendants. )

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND DENYING PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment and Brief in Support Thereof (Adv. Doc. 10), filed by Defendants Michael Rex Thompson and Sandra Ray Thompson (collectively, the "Thompsons") on February 12, 2007; Plaintiffs' Brief in Opposition to Defendants' Alternative Motions for Judgment on the Pleadings and Combined Cross-Motion for Summary Judgment and Brief in Support of Plaintiffs' Cross-Motion for Summary Judgment ("Plaintiffs' Cross-Motion") (Adv. Doc. 15), filed by Plaintiffs Affordable Bail Bonds, Inc.

("ABB") and Roberta A. Dampf-Aguilar ("Ms. Dampf-Aguilar") (collectively, the "Bondsman")[1] on March 16, 2007; Defendants' Response Brief to Plaintiffs' Cross-Motion for Summary Judgment ("Defendants' Response") (Adv. Doc. 18), filed by the Thompsons on April 2, 2007, and Plaintiffs' Reply Brief in Support of Cross-Motion for Summary Judgment (Adv. Doc. 19), filed by the Bondsman on April 18, 2007.

## I.     Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(I); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056. The parties agree that the material facts relevant to the disposition of this matter are undisputed and Plaintiffs and Defendants each seek judgment in their favor as a matter of law.[2]

---

[1]The Court uses the term "Bondsman" because the Oklahoma Statutes governing persons engaged in the business of pledging cash or property as security for bail bonds refer to such persons, regardless of their gender, as "bondsmen."  See 59 O.S. § 1301(7). Moreover, the Plaintiffs themselves and the State courts refer to the Plaintiffs as "bondsmen."

[2]The Thompsons filed their motion for summary judgment in the alternative to their Rule 12 motion for judgment on the pleadings.  Rule 12(c) of the Federal Rule of Civil Procedure (made applicable to this adversary proceeding by virtue of Bankruptcy Rule

### III.   Record on Summary Judgment

The following material facts are uncontested and are supported by the record:[3]

At all times relevant to this proceeding, Ms. Dampf-Aguilar was a bail bondsman licensed by the State of Oklahoma, and was president of ABB, an Oklahoma corporation. Complaint (Adv. Doc. 1), ¶ 2; Answer and Counterclaim of Defendants (Adv. Doc. 9), ¶ 2.

In 2004, the Thompsons' son, Aaron Thompson, was charged in Rogers County, Oklahoma, with three offenses (the "Rogers County Prosecutions"). Complaint, ¶ 8; Answer, ¶ 3.  In connection with the Rogers County Prosecutions, bail was set for each offense, and the Bondsman posted three bonds totaling $145,000 to secure Aaron Thompson's release. $100,000 Bond dated July 31, 2004 ("Bond A"), $10,000 Bond dated July 31, 2004 ("Bond B"), and $35,000 Bond dated August 13, 2004 ("Bond C"), Exhibits 1-3 to Plaintiffs' Cross-Motion.[4]  Bond A provided–

---

7012(b)), provides that a party may file a motion for judgment based solely on the allegations and admissions contained in the pleadings (*i.e.*, the Complaint and Answer), but if "matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment," in which case all parties should be given an opportunity to present evidentiary matter supporting their versions of the material facts.  Fed. R. Civ. P. 12(c).  Because the parties attached additional materials to their motions and responses, and both sides believe they are entitled to judgment as a matter of law based upon the record presented, the Court will evaluate the cross-motions under the standard set forth in Rule 56 of the Federal Rules of Civil Procedure.

[3]No party has contested any statement of fact asserted by the opposing party or objected to the authenticity of any document attached to the cross-motions, and therefore the Court considers all statements of fact undisputed and all documents authenticated.

[4]In the Complaint, the Bondsman alleged that it posted two bonds totaling $135,000. In the Plaintiffs' Cross-Motions and Defendants' Response, the parties appear to stipulate that three bonds were posted in the Rogers County case, which totaled $165,000.  According

> [T]he above named defendant [Aaron M. Thompson], as principal, and the
> undersigned R.A. Dampf-Aguilar [through her attorney in fact], as surety(ies),
> personally appeared before the undersigned authority and jointly and
> severally acknowledged themselves to be indebted to the State of Oklahoma in the sum
> of One Hundred Thousand Dollars ($100,000) . . . to which payment well and
> truly to be made we bind ourselves . . . .
>
> The conditions of this bond are such that, if the above named defendant, who
> has been committed to the county jail of Rogers County, State of Oklahoma,
> shall personally appear . . . to answer a charge preferred against him . . . and
> shall not depart the said Court without leave and shall obey any order issued
> by said Court, then this bond shall be void; otherwise, this bond shall remain
> in full force and effect.

Bond A, Exhibit 1 to Plaintiffs' Cross-Motion.   Bonds B and C contain identical language

except they indebted Aaron Thompson, as principal, and Ms. Dampf-Aguilar, as surety, to

the State of Oklahoma (the "State") in the additional sums of $10,000 and $35,000,

respectively.   The bonds were signed by Aaron Thompson, as principal, and by R.A. Dampf-

Aguilar (by her Attorney in Fact), as surety, and the bonds were filed in the Rogers County

case.

The arrest of Aaron Thompson in Rogers County apparently triggered an application

to revoke the terms of probation in a prior Tulsa County criminal case (the "Tulsa County

Prosecution"). Complaint, ¶ 10; Answer, ¶ 3; Bond dated August 2, 2004 ("Bond D"),

Exhibit 6 to Plaintiffs' Cross Motion.  In connection with the Tulsa County Prosecution, bail

---

to the exhibits, however, the bonds posted in Rogers County total $145,000.  Discrepancies
in the amount of the bonds does not affect the Court's analysis of whether the Thompsons'
debt to the Bondsman is dischargeable.

was set at $20,000, and Aaron Thompson and bondsman Bryan Shed[5] executed Bond D which contained language similar to Bonds A, B and C.  Bond D was filed in the Tulsa County case.

In 2005, Aaron Thompson failed to appear for court dates in Tulsa and Rogers County and thus violated the terms of his release on bail and the conditions of the bonds.  Complaint, ¶¶ 14, 15; Answer, ¶ 3.  Consequently, the bonds posted by the Bondsman were forfeited to the State, and an Order and Judgment of Forfeiture was entered in connection with each bond (the "Forfeiture Judgments").  Complaint, ¶ 16; Answer, ¶ 3; Exhibit 4, 5 and 7 to Plaintiffs' Cross-Motion.[6]  The Forfeiture Judgments established money judgments against Aaron Thompson in the amount of the bonds, and ordered the Bondsman, as his surety, to deposit the face amount of the forfeited bonds to the clerk of the court within ninety-one days.  The Bondsman, as surety, paid the judgments to the State on behalf of the principal, Aaron Thompson.

In order to induce the Bondsman to post the bonds, the Thompsons incurred bond premiums in the amount of $10,700 and agreed to indemnify the Bondsman in the event that the bonds were forfeited.  Complaint, ¶ 7; Answer, ¶ 3; Bail Bond Agreements, Exhibit 1 to

---

[5]The record does not indicate how Ms. Aguilar and/or ABB became liable to the State on Bond D, but the Thompsons do not dispute it, and again, the discrepancy does not affect the Court's analysis of the dischargeability of the Thompsons' debt to the Bondsman.

[6]The record contains Forfeiture Judgments relating to Bond A, Bond C and Bond D. The issue of whether Bond B was also forfeited is not material to the determination of whether the Thompsons' debt to the Bondsman is dischargeable.

Complaint.[7]   In the Bail Bond Agreements, Aaron Thompson, as the defendant, and the Thompsons, as indemnitors, promised that they would pay the Bondsman "immediately upon the declaration of forfeiture of said Bail Bond the penal amount thereof."  Bail Bond Agreement dated July 31, 2004, ¶ SIXTH.  In addition, for each bond they guaranteed, one or both of the Thompsons also executed a "Plain Talk Contract" ("Contract") (Exhibit 4 to the Complaint) and an "Indemnitor/Guarantor Checklist" ("Checklist") (Exhibit 5 to the Complaint).[8]  Notably, the Thompsons did not enter into any contracts with the State or any agency or subdivision thereof, nor did they act as sureties to the State for the payment of the bail amount if Aaron Thompson failed to appear in court as required. The Thompsons' obligations ran solely to the Bondsman.  In the Checklists, the Thompsons agreed that "if the bond is ordered forfeited and it is not ordered reinstated or exonerated . . . I must pay the full amount of the bail forfeited to the bail agency."  Exhibit 5 (emphasis added).  Upon the entry of the Forfeiture Judgments, one or both of the Thompsons became liable to the Bondsman for the full face amount of each of the bonds.

The Thompsons filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 13, 2005, and the Court entered an order discharging their dischargeable debts on January 17, 2006 (the "Discharge").

---

[7]Mr. Thompson executed three Bail Bond Agreements; Mrs. Thompson executed only the agreement relating to Bond A (the $100,000 bond).

[8]Mrs. Thompson executed only the Contract relating to the $100,000 bond and did not execute any of the Checklists.

**IV.     Conclusions of law**

        The Bondsman asserts, and the Thompsons do not dispute, that as of the petition date, the Thompsons owed the Bondsman a debt arising from the execution of the Bail Bond Agreements and the subsequent the forfeiture of the bonds.  The Bondsman contends, however, that the debt was excepted from the Discharge pursuant to Section 523(a)(7) of the Bankruptcy Code, which provides, in relevant part–

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> *****
>
>> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . .

11 U.S.C. § 523(a)(7) ("Section 523(a)(7)").  The Thompsons contend that Section 523(a)(7) is inapplicable because their debt to the Bondsman is not a fine, penalty, or forfeiture, but rather arose from their breach of the Bail Bond Agreement, the debt is not payable to and for the benefit of a governmental unit, and the debt, if paid, would compensate the Bondsman for its actual pecuniary loss.  The Bondsman asserts, however, that courts have determined that permitting the discharge of debts arising from bail bond forfeitures contravenes public policy.  Further, the Bondsman argues that it is subrogated to the rights of the State against the Thompsons, and therefore "steps into the shoes" of the State and has the right to contest the discharge of the Thompsons' debt to the same extent the State would have such a right.

Section 523(a)(7) is often invoked as an exception to discharge when a debtor owes a debt related to the forfeiture of a bail bond.  However, the exception applies only in narrow circumstances.[9]  In this case, the undisputed facts establish that Bondsman's claim that the Thompsons' debt was excepted from the Discharge is deficient as a matter of law because (1) the debt is not for a forfeiture of the Thompsons' bond to the State (*i.e.*, the Thompsons were not parties to any of the appearance bonds that were forfeited), nor is it a fine or penalty imposed by the State; instead, the debt represents a breach of the Thompsons' contract to indemnify the Bondsman; (2) the Thompsons' debt is not payable to the State nor is it for the benefit of the State, but rather, according to the Bail Bond Agreement, Contract and Checklist, the debt is payable to the Bondsman (*i.e.*, an individual and/or a private corporation); and (3) the debt results from the breach of the Thompsons' promise to indemnify the Bondsman for the monetary losses it incurred upon Aaron Thompson's violation of the terms of the bonds, and therefore would function as "compensation for pecuniary loss."  Accordingly, the Bondsman has not established any of the three elements of Section 523(a)(7).

Further, although the Bondsman may be subrogated to the rights of the State against Aaron Thompson, who was principally liable to the State on the bonds, the State never had a claim against the Thompsons arising from the forfeiture of the bonds. "Stepping  into the

---

[9]In order to give effect to the policy of giving honest but unfortunate debtors a fresh start, the statute excepting debts from discharge is narrowly construed.  Bellco First Federal Credit Union v. Kaspar (In re Kaspar), 125 F.3d 1358 (10th Cir. 1997).

shoes" of the State after paying Aaron Thompson's bonds gave the Bondsman no greater claim against the Thompsons than the State possessed.  Accordingly, the Bondsman's claim that it satisfies the elements of Section 523(a)(7) by "stepping into the shoes" of the State has no merit.  For these reasons, as supported by the analysis below, the Court concludes that the Thompsons' debt to the Bondsman is dischargeable.

Relatively harmonious caselaw has emerged upon consideration of the dischargeability of debts related in some way from the forfeiture of bail bonds.  The role of the debtor in the bail bonding process is determinative of whether the debtor's debt is discharged.  The bail bond procedure usually involves at least two, and sometimes three or four parties:  the state, who agrees to release a defendant on bail upon the posting of a bond; the defendant/principal, who promises to pay a monetary penalty to the state if he/she does not abide by the terms of bail; the surety, who guarantees to the state the performance of the defendant/principal, including the payment of the defendant/principal's penalty; and in some cases, an indemnitor, who contracts with the surety to indemnify the surety for its losses.[10]

_____

[10]See State v. Vaughn, 2000 OK 63, 11 P.3d 211, 214 ("In the context of a bail bond agreement, the surety is the bail bondsman, the principal is the defendant whose appearance is being guaranteed by the surety, and the creditor is the court or the state.  By the written undertaking, the bondsman (surety) agrees to insure the appearance of the defendant (principal) before the court and, in the event the defendant fails to appear, to pay to the court (creditor) the amount of money specified in the order fixing bail.") (citations omitted).

See also 59 O.S. § 1301(12), which defines "bond" as "an appearance bond for a specified monetary amount which is executed by the defendant and a licensed bondsman pursuant to the provisions of Section 1301 *et seq.* of this title and which is issued to a court clerk as security for the subsequent court appearance of the defendant upon release from actual custody pending the appearance."

Further, 59 O.S. § 1323 states: "When the defendant has been admitted to bail, he or

A.      The debtor is the defendant who "broke bail"

The easiest case arises when the debtor is the defendant/principal who violated the conditions of bail and owes a monetary "penalty" to "a governmental unit" upon forfeiture of the bond, which penalty is not "compensation for pecuniary loss." In those circumstances, it appears that all three elements of Section 523(a)(7) are satisfied. See, e.g., Virginia v. Collins (In re Collins), 173 F.3d 924, 932 n.4 (4th Cir. 1999) (dicta).[11]

B.      The debtor is a professional bondsman/surety

In many Section 523(a)(7) cases, the debtor is a professional bail bondsman who served as surety for one or more defendants/principals who, by their misconduct or failure

---

another in his behalf may make a cash bond by depositing with an official authorized to take bail, a sum of money, or nonregistered bonds . . . together with his personal undertaking and an undertaking of such other person, if the money or bonds are deposited by another. Upon delivery to the official, in whose custody the defendant is, of a certificate of such deposit, he shall be discharged from custody in the cause."

[11]In a recent case, the Tenth Circuit had an opportunity to interpret Section 523(a)(7) in the context of the potential discharge by a criminal defendant of a debt for court-ordered restitution imposed as a component of a criminal sentence. See Troff v. Utah (In re Troff), 488 F.3d 1237 (10th Cir. 2007). Even though the restitution was payable directly to the victim rather than to the government, the Tenth Circuit held that federal courts must interpret federal laws consistent with their obligation to honor a state's right to punish offenders of state law and to avoid interference in state criminal prosecutions. Accordingly, the court determined that restitution orders entered by a state as part of a criminal sentence were in fact "payable to and for the benefit of the government" because all components of the sentence, regardless of to whom *money* was to be paid, were intended to require the defendant to "pay" for his crime and vindicate (and thus benefit) the state's interest in enforcing its laws. Id. at 1241-43. Thus, the criminal defendant's debt was excepted from discharge pursuant to Section 523(a)(7). Id. at 1243.

This case illustrates that the elements of Section 523(a)(7) are more liberally construed in cases in which a *criminal defendant* seeks to escape liability on a debt imposed by a state as punishment or penalty for violating state criminal laws due to federalism concerns. See Kelly v. Robinson, 479 U.S. 36 (1986).

to appear, caused bonds posted by the bondsman to be forfeited.  In those instances, two elements of Section 523(a)(7) are obviously satisfied:  the debtor/bondsman/surety owes a debt to a governmental unit and that debt does not constitute compensation for the government's pecuniary loss.  In these cases, the primary disputed element is whether a *bondsman's* unpaid debt to a governmental unit arising from the forfeiture of a bond is a debt "for a fine, penalty, or forfeiture."  <u>See Hickman v. Texas (In re Hickman)</u>, 260 F.3d 400 (5th Cir. 2001); <u>Virginia v. Collins (In re Collins)</u>, 173 F.3d 924 (4th Cir. 1999).  <u>See also Dobrek v. Phelan</u>, 419 F.3d 259 (3d Cir. 2005).

In <u>Hickman</u>, the Fifth Circuit Court of Appeals held that the term "forfeiture" in Section 523(a)(7) means "forfeitures imposed because of misconduct or wrongdoing by the debtor." <u>Id</u>. at 405.  The Fifth Circuit observed that "merely because a bail bond judgment [against the surety] is generally referred to as a forfeiture" does not automatically render it a "forfeiture" within the ambit of Section 523(a)(7).  <u>Id</u>. at 405.  The "true nature" of the debt incurred by the surety is contractual, as "Texas courts have recognized that 'bail bonds are contracts between the surety and the State' and that '[t]he contract consists of a promise by the surety that the principal will appear before the court in exchange for a promise by the State that it will release the principal.'" <u>Id</u>. at 405-06, *quoting* <u>Reyes v. State</u>, 31 S.W.3d 343, 345 (Tex. App. 2000).[12]

_____

[12]Oklahoma law also recognizes that "[a] bail bond agreement [between the state and a bondsman] is a contract of surety subject to rules of construction generally applicable to contracts."  <u>State v. Vaughn</u>, 2000 OK 63, 11 P.3d 211, 214 (quotation and citation omitted). <u>See also</u> <u>State v. Pyles</u>, 2002 OK CIV APP 91, 55 P.3d 473.

In further support of its conclusion that a "forfeiture" under Section 523(a)(7) must be one imposed for some misconduct on the part of the debtor, the Fifth Circuit observed that the United States Supreme Court interpreted Section 523(a)(7) to except from discharge restitution payments ordered as part of a debtor's criminal sentence, even though restitution was not mentioned in the statute and even though such payments appear to comprise compensation for a crime victim's actual pecuniary loss.  In that decision, the Supreme Court concluded that the "object and policy" of Section 523(a)(7) is to except from discharge all manner of criminal penal sanctions.  Id. at 403, *quoting* Kelly v. Robinson, 479 U.S. 36, 43 (1986).  The Fifth Circuit acknowledged that while Kelly expanded the meaning of the phrase "fine, penalty, or forfeiture" to include restitution imposed as a criminal sanction, it did not *limit* the meaning of the phrase "fine, penalty, or forfeiture" to refer *only* to debts imposed for the purpose of punishment.  Id. at 403.  But in analyzing the term "forfeiture" in Section 523(a)(7) "by the company it keeps," the Fifth Circuit concluded that because "[t]he definitions of penalty and fine reflect the traditional understanding of . . . these terms as punitive or penal sanctions imposed for some form of wrongdoing[,] [t]heir inclusion in § 523(a)(7) implies that Congress intended to limit the section's application to forfeitures imposed upon a wrongdoing debtor."  Id. at 403-04.[13]  Thus, the debt arising from the

_____

[13]Moreover, taking the list of specific exceptions to discharge (*i.e*., Section 523(a)) as a whole, the Fifth Circuit found that the exceptions are generally intended to advance certain social policies (payment of taxes, support of children, etc.), including the policy of insuring that debtors do not discharge debts incurred through wrongful acts.  Id. at 404.  Section 523(a)'s overriding purpose further "suggests Congress' intent to limit the scope of the phrase 'fine, penalty, or forfeiture' to debts imposed as punishment for wrongdoing by the debtor."  Id.

bondsman's contractual obligation to the state, as a surety, to pay the defendant's bail bond was not a "forfeiture" under Section 523(a)(7), and was dischargeable.  Id. at 407.  Accord Collins, 173 F.3d at 931-32; Texas v. Davis (In re Davis), 340 B.R. 767, 773 (Bankr. E.D. Tex. 2006) (the debtor/bondsman "is not a criminal . . . [but] simply breached a contractual relationship with the State from which a debt arose.  It should be treated accordingly.").[14]

The Third Circuit has departed from the Fourth and Fifth Circuits in holding that judgments against professional bail bondsmen are "forfeitures" within the meaning of Section 523(a)(7), are intended to be punitive, and therefore are non-dischargeable.  See Dobrek v. Phelan, 419 F.3d 259, 263 (3d Cir. 2005).  The Third Circuit reasoned that because a professional bondsman has an obligation to produce the defendant in court, the breach of that obligation that results in the "forfeiture" of the bond and imposes a *monetary sanction* on the bondsman, which is consistent with the punitive purpose of "fine" and "penalty."  Id. at 264-65.  In the Third Circuit, therefore, a debt owed to a state by a professional bondsman resulting from the forfeiture of a bond satisfies all three requirements of Section 523(a)(7), *i.e.*, the debt is a "fine, penalty, or forfeiture," is owed to a governmental unit, and is not compensation for pecuniary loss.

---

[14]A divided panel of the Fifth Circuit recently reaffirmed its holding in Hickman, admittedly in *dicta*, in Texas v. Soileau (In re Soileau), 488 F.3d 302, 308-12 (5th Cir. 2007) (the majority of the panel responding to a "collateral attack" on Hickman by a concurring judge).

C.    The debtor is a non-professional surety

Where the debtor is a non-professional individual surety of a bail bond, *i.e.*, a friend

or relative of the principal/defendant, that surety also owes the debt arising from the bond

forfeiture directly to the government.  See United States v. Zamora, 238 B.R. 842 (D. Ariz.

1999); County of Berks v. Damore (In re Damore), 195 B.R. 40 (Bankr. E.D. Pa. 1996).  In

Zamora, the debtor acted as surety to the government for a $25,000 bond posted by her

nephew.  When the defendant failed to appear in court, the government forfeited the bond

and a judgment was entered against the debtor.  When the debtor filed bankruptcy, the

government challenged the discharge of the forfeiture judgment.  The bankruptcy court held

that the debt was dischargeable, but the district court reversed the bankruptcy court on

appeal, and concluded that because the debt literally resulted from a "forfeiture," there was

no need to further inquire into whether the forfeiture of bail is contractual or penal or whether

it is the type of forfeiture Congress intended to disfavor in Section 523(a)(7).  Zamora, 238

B.R. at 844.  Thus, because the forfeiture judgment was owed to the government and was

unrelated to the government's pecuniary loss, the judgment was excepted from discharge.

Id. at 845.

In Damore, the debtor was also an individual who had acted as surety on behalf of the

fugitive defendant on the forfeited bail bond.  Although the individual surety owed the state

a debt that did not compensate the state for pecuniary loss, which satisfied the second and

third prongs of Section 523(a)(7), the bankruptcy court determined that the debtor's

obligation arose from a breach of a contract with the state (the bond) and the debt was not

14

imposed as a penal sanction, and therefore was not a "fine, penalty, or forfeiture" and did not satisfy the first element of Section 523(a)(7).  Id. at 42.

The holding in Damore (issued by a bankruptcy court in the Third Circuit) was implicitly overturned a decade later by the Third Circuit in City of Philadephia v. Gi Nam (In re Gi Nam), 273 F.3d 281 (3d Cir. 2001).  In Gi Nam, the individual surety was the father of a criminal defendant charged with murder.  The father guaranteed to the City of Philadelphia (by virtue of a bond) his son's obligation to pay one million dollars in the event the son failed to appear as ordered.  Id. at 283.  The son absconded, the bond was forfeited, and judgment for the full amount of the bond was entered jointly against the father and son in favor of the city.  Id. at 284.  Unique to this case, and likely determinative of the analysis and result, is the undisputed fact that the father/surety actively assisted his son in "jumping bail" and fleeing to South Korea.  Id.  When the father/surety filed bankruptcy, the city asserted a claim on the bond forfeiture judgment and sought a declaration that the judgment was non-dischargeable.  Id.

As in the bondsman/surety cases, the father/surety's debt was payable to a governmental unit and was not related to the government's pecuniary loss, and thus the sole issue for the court was whether the surety's debt to the city was a "fine, penalty, or forfeiture."  Id. at 285-86.  The Third Circuit held that a bond forfeiture is a "forfeiture" within the meaning of Section 523(a)(7), relying on non-binding pre-Code case law that held that bail bond forfeiture debts were not "allowed debts," and citing the public policy concern that bail might become available only to wealthy (solvent) defendants if bond forfeitures

15

were declared dischargeable in bankruptcy, as well as the federalism concern that the federal courts should not interfere with a state's administration of its criminal justice system.  Id. at 290-94.  And, as observed earlier, it appears that the egregious and culpable nature of the surety's conduct strongly influenced the Third Circuit to declare the debt non-dischargeable. The court mused that "[o]nce a criminal defendant becomes convinced that his relative will be able to escape the financial responsibility (other than the negative, albeit temporary and comparatively lesser, consequences of the bankruptcy filing itself) for the bail amount if the defendant flees, the incentive to appear for trial diminishes sharply.  Similarly, given that the surety would no longer face a sizable debt should the defendant flee . . . , the surety would no longer be deterred from assisting the defendant in his flight. . . .  Many a father might consider the opportunity to purchase his son's life at the cost of enduring a bankruptcy proceeding to be an attractive bargain"  Id. at 293-94.  Accordingly, the Third Circuit held that "Section 523(a)(7) does except from discharge in a Chapter 7 bankruptcy a bail bond forfeiture judgment entered against a family surety for failure to produce the defendant for trial."  Id. at 294.[15]

D.      The debtor is an indemnitor of a surety

Where the debtor has contractually indemnified the surety against its pecuniary loss in the event of a forfeiture of a bond, the debtor's debt to the surety satisfies none of the

_____

[15]As discussed above, the Third Circuit subsequently broke with other circuits when it held, in Dobrek, that many of the public policy concerns underlying the Gi Nam decision resonated with equal force when a professional bondsman seeks to discharge a debt resulting from a bond forfeiture.

elements of Section 523(a)(7).  See, e.g., Empire Bonding Agency v. Lopes (In re Lopes),
339 B.R. 82 (Bankr. S.D.N.Y. 2006).  In Lopes, the debtor executed an indemnity agreement
with the bondsman who acted as surety for the bond that permitted the release of the debtor's
husband on bail.  The debtor's husband absconded, the surety's bond was forfeited to the
state, and the surety obtained a judgment against the debtor pursuant to the indemnity
agreement for the full amount lost by the surety.  Lopes, 339 B.R. at 84.  When the
debtor/indemnitor filed bankruptcy, the surety sought to except the judgment from discharge
under Section 523(a)(7).  Under the indemnity agreement, the debtor was required to pay the
surety an amount equal to the amount of losses incurred by the surety as a result of the
forfeited bond, and thus the debt was compensation for pecuniary loss.  Id. at 88-89.
Moreover, the surety to whom the debt was owed was not a governmental agency.  Id. at 89.
Because two of the three requirements of Section 523(a)(7) were unsatisfied, it was
unnecessary to resolve the issue raised by the split between the Fourth and Fifth Circuits, on
one hand, and the Third Circuit, on the other, regarding whether the judgment against the
debtor/indemnitor constituted a "fine, penalty, or forfeiture."  Id. at 88.

    The surety in the Lopes case also argued that it was entitled to prevail on the theory
that it possessed rights of subrogation.  Id. at 90.  The Lopes court observed that subrogation
is "the substitution of one party for another whose debt the party pays, entitling the party to
the rights, remedies, or securities that would otherwise belong to the debtor."  Id.  In the case
of a bail bond, the surety pays the debt the principal (i.e., the criminal defendant) owes the
state, and therefore becomes entitled to rights and remedies the state would have had against

the criminal defendant on the bond.  Because the indemnitor of the surety had no direct liability to the state, however, the surety could not "claim that it stands in the shoes of New York County as subrogee of New York State for dischargeability purposes." Id.  Finally, the court assessed potential public policy concerns related to the functioning of the criminal justice system in allowing an indemnitor to discharge a debt to a surety on a bail bond.  The court found "no reason that a private bail-bonding agency should receive any special protection from a bankruptcy discharge. The risk of flight [of a criminal defendant] is a cost of doing business for these agencies, and they are permitted to charge accordingly." Id. at 91.  Thus, the surety's judgment against the debtor/indemnitor was not excepted from discharge under Section 523(a)(7).[16]

Similarly, in Pioneer Gen'l Ins. Co. v. Midkiff (In re Midkiff), 86 B.R. 239, 240 (Bankr. D. Colo. 1988), a bankruptcy court held that the debt owed by a debtor/bondsman to its insurer (i.e., in this case, the debtor/bondsman was the *indemnitor* of the insurance company's payment of forfeited bonds) was dischargeable.  The bankruptcy court incorporated verbatim the unpublished opinion issued in a case with similar facts, Pioneer Gen'l Ins. Co. v. Paige (In re Paige), Adv. No. 87 E 194 (Bankr. D. Colo. April 15, 1988).

---

[16]A second bankruptcy judge in the Southern District of New York reached the same conclusion as to the dischargeability of an indemnitor's debt to a surety, and the inapplicability of subrogation in such a case.  See Corrales v. Sanchez (In re Sanchez), 365 B.R. 414 (Bankr. S.D.N.Y. 2007).  The Bondsman argues that a third bankruptcy judge in that district held otherwise, but the unpublished order cited by the Bondsman contains no analysis in support of its conclusions, and this Court finds that abbreviated order unpersuasive.  See Findings of Fact, Conclusions of Law and Judgment Determining that Debt Due Plaintiff is Non-Dischargeable entered in Amwest Surety Ins. Co. v. Contreras (In re Contreras), Adv. No. 01-3317-AJG (Bankr. S.D.N.Y. July 31, 2006).

In the <u>Paige</u> case, the bankruptcy court assumed without deciding that the insurer could be subrogated to the rights of the state against the bondsman/indemnitor (and thus the debt might be deemed owed to a governmental unit).[17]  Nevertheless, the court determined that the debt owed by the bondsman/indemnitor to its insurer was not excepted from discharge under Section 523(a)(7).  Although the debt arose because one or more defendants "broke bail" and caused bonds issued by the bondsman to be "forfeited," resulting in payment to the state by the insurer, the debt owed by the bondsman/indemnitor to its insurer was purely contractual in nature.  <u>Id</u>. at 244.  "To rule otherwise would, in effect impose a penal sanction where one was never imposed in the first instance."  <u>Id</u>.

     E.    <u>The Thompsons are indemnitors of a surety</u>

It is undisputed that the Thompsons' debt to the Bondsman is analogous to the debts at issue in the <u>Lopes</u> and <u>Sanchez</u> cases – that is, it is a debt owed by an indemnitor to a surety that became payable to the surety pursuant to an indemnity contract, and the debt is measured by the loss incurred by the surety upon the non-performance of the principal/criminal defendant.  Consequently, the debt fails to satisfy even one of the elements of Section 523(a)(7).  This Court fully concurs with the <u>Lopes</u> and <u>Sanchez</u> courts in their analysis of Section 523(a)(7) and their application of the statute to debts of indemnitors.

---

[17]In that instance, subrogation may have been appropriate, as the bondsman was in fact independently liable to the state by virtue of posting the bond.  Absent an agreement otherwise, an insurer would normally be entitled to "step into the shoes" of the party whose debt was paid (the state) in order to recover its loss from the party who was obligated to pay the debt (the bondsman).

Accordingly, this Court concludes that Section 523(a)(7) does not except the Thompsons' debt to the Bondsman from discharge.

F.    The Gi Nam/Dobrek/Zamora cases are distinguishable

The Bondsman urges that the Gi Nam case, as extended by Dobrek, and the Zamora case, control the disposition of its claim in this proceeding.  However, the debtors whose debts were declared non-dischargeable in Gi Nam, Dobrek and Zamora were sureties on bonds and became indebted directly to the government when their criminal defendants took flight and the bonds were forfeited.  In this case, the Thompsons did not act as sureties to the State for Aaron Thompson's bond; that was the Bondsman's role.  The Thompsons did not promise the State that they would guarantee the appearance of Aaron Thompson in court, nor did they bind themselves to pay the State if Aaron Thompson failed to comply with the terms of his bail.  Moreover, allowing the Thompsons' debt to be discharged would not interfere with the State's administration of the criminal justice system, as the Thompsons are not criminal defendants and the State did not impose the debt.  Further, it is mere speculation that professional bondsmen, who are paid to assume the risk of a defendant's non-appearance, would cease writing bonds for criminal defendants if an indemnitor's debt was not excepted from discharge.  Thus, even the policy concerns espoused by the Third Circuit in Gi Nam and Dobrek, which constitute the gravamen of the Bondsman's argument to this Court, are inapposite in this case.

Ironically, if the Bondsman in this case were the debtor in bankruptcy who owed the State a debt upon forfeiture of Aaron Thompson's bond, under Hickman and Collins, it

20

would be entitled to discharge that debt, even though the debt would be owed to government and would not be compensation for the government's pecuniary loss.  The Thompsons' obligation to indemnify the Bondsman for the same debt that the Bondsman could discharge is even further estranged from the scope of Section 523(a)(7).  And although under <u>Dobrek</u>, the Bondsman's hypothetical debt to the State would not be discharged in the Third Circuit, the Thompsons' debt would nevertheless be dischargeable because, unlike the debt in <u>Dobrek</u>, the Thompsons are not obligated to the State, but rather to the Bondsman, and the stated purpose of the obligation was to indemnify for Bondsman's pecuniary loss.[18]

## V.    Conclusion

For the reasons stated herein, the  Defendants' Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment is granted and the Plaintiffs' Cross-Motion for Summary Judgment is denied.   A separate judgment shall be entered in favor of the Defendants and against the Plaintiffs.

**SO ORDERED** this 12th day of September, 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

---

[18]As set forth above, the Bondsman's attempt to "step into the shoes" of the State is futile since the Thompsons were never indebted to the State, and thus the Bondsman would not inherit any rights against the Thompsons from the State.

21